No. 26-1101

# IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

DEFENDING EDUCATION, *et al.*,

*Plaintiffs-Appellants*,

v.

AUBREY C. SULLIVAN, in her official capacity as the Director of the Colorado Civil Rights Division, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Colorado, No. 1:25-cv-01572 (Rodriguez, J.)

# REPLY BRIEF OF APPELLANTS (ORAL ARGUMENT REQUESTED)

J. Michael Connolly
Cameron T. Norris
Paul R. Draper
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
cam@consovoymccarthy.com
paul@consovoymccarthy.com

September 4, 2026

*Counsel for Appellants*

## TABLE OF CONTENTS

Table of Authorities ..................... ii
Introduction ..................... 1
Argument ..................... 2
I. Plaintiffs likely have standing. ..................... 2
A. Plaintiffs are arguably subject to CADA. ..................... 3
B. Plaintiffs face a credible threat of enforcement. ..................... 12
C. Defendants' remaining jurisdictional arguments fail. ..................... 19
II. The Court should grant a preliminary injunction. ..................... 22
A. Defendants continue to dodge the merits. ..................... 22
B. The remaining factors favor a preliminary injunction. ..................... 23
C. A tailored preliminary injunction is appropriate. ..................... 25
Conclusion ..................... 27
Certificate of Compliance ..................... 28
Certificate of Service ..................... 28

## TABLE OF AUTHORITIES

### Cases

*303 Creative v. Elenis*,
6 F.4th 1160 (10th Cir. 2021) .......... 10-11, 16, 19

*Am. Encore v. Fontes*,
152 F.4th 1097 (9th Cir. 2025) .......... 8

*Animal Legal Defense Fund v. Kelly*,
9 F.4th 1219 (10th Cir. 2021) .......... 10

*Awad v. Ziriax*,
670 F.3d 1111 (10th Cir. 2012) .......... 24

*Babbitt v. United Farm Workers Nat. Union*,
442 U.S. 289 (1979) .......... 12, 17

*Barry v. Thomas Jefferson University Hospitals*,
2026 WL 935837 (E.D. Pa. Apr. 7) .......... 9

*Book People, Inc. v. Wong*,
91 F.4th 318 (5th Cir. 2024) .......... 21

*Botosan v. Paul McNally Realty*,
216 F.3d 827 (9th Cir. 2000) .......... 6

*Braidwood Management v. EEOC*,
70 F.4th 914 (5th Cir. 2023) .......... 17-18

*Bryant v. Woodall*,
1 F.4th 280 (4th Cir. 2021) .......... 12-14

*CDIA v. King*,
678 F.3d 898 (10th Cir. 2012) .......... 19

*Cerame v. Slack*,
123 F.4th 72 (2d Cir. 2024) .......... 12

*Chiles v. Salazar*,
146 S. Ct. 1010 (2026) .......... 18

*Christian Healthcare Centers v. Nessel*,
117 F.4th 826 (6th Cir. 2024) .......... 8, 17

*Citizens for Responsible Gov't State PAC v. Davidson*,
236 F.3d 1174 (10th Cir. 2000) .......... 15

*Citizens United v. Gessler*,
773 F.3d 200 (10th Cir. 2014) .......... 23

*Craig v. Masterpiece Cakeshop*,
370 P.3d 272 (Colo. Ct. App. 2015) .......... 5

*Creek Red Nation v. Jeffco Midget Football Association*,
175 F. Supp. 3d 1290 (D. Colo. 2016) .......... 5

*Cuviello v. City of Vallejo*,
944 F.3d 816 (9th Cir. 2019) .......... 24

*Darren Patterson Christian Academy v. Roy*,
699 F. Supp. 3d 1163 (D. Colo. 2023) .......... 12, 20

*Dean v. United States*,
556 U.S. 568 (2009) .......... 7

*Defending Education v. Olentangy*,
158 F.4th 732 (6th Cir. 2025) .......... 9

*Disabled Rights Action Committee v. Las Vegas Events*,
375 F.3d 861 (9th Cir. 2004) .......... 5

*Echevarria v. AstraZeneca Pharm. LP*,
856 F.3d 119 (1st Cir. 2017) .......... 19

*FCC v. Fox Television Stations*,
567 U.S. 239 (2012) .......... 25

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) .......... 6

*FEC v. Cruz*,
596 U.S. 289 (2022) .......... 14

*First Choice Women's Resource Centers v. Davenport*,
146 S. Ct. 1114 (2026) .......... 20

*Free the Nipple v. Fort Collins*,
916 F.3d 792 (10th Cir. 2019) .......... 24, 26

*Gays Against Groomers v. Garcia*,
169 F.4th 981 (10th Cir. 2026) .......... 9, 11

*Glover Const. Co. v. Andrus*,
591 F.2d 554 (10th Cir. 1979) .......... 7

*Grosvenor v. Qwest Corp.*,
733 F.3d 990 (10th Cir. 2013) .......... 2, 19

*Hager v. Brinker Texas, Inc.*,
102 F.4th 692 (5th Cir. 2024) .......... 6

*Hawkins v. Schwan's Home Services*,
778 F.3d 877 (10th Cir. 2015) .......................................................................19

*Herrera v. Santa Fe Public Schools*,
792 F. Supp. 2d 1174 (D.N.M. 2011)........................................................................26

*IFS v. Johnson*,
148 F.4th 318 (5th Cir. 2025) ......................................................................1, 16

*IRI v. Walker*,
450 F.3d 1082 (10th Cir. 2006) ..................................................................... 18, 21

*Jensen v. United First Financial*,
2009 WL 5066683 (D. Utah Dec. 16) ........................................................... 4-5

*Jones v. Coleman*,
2017 WL 1397212 (M.D. Tenn. Apr. 19) .......................................................26

*Latta v. Otter*,
2014 WL 12597162 (D. Idaho May 14) .........................................................26

*Martinez v. Sessions*,
873 F.3d 655 (9th Cir. 2017)........................................................................23

*Masterpiece Cakeshop v. CCRC*,
584 U.S. 617 (2018)..........................................................................1, 19, 25

*Masterpiece Cakeshop v. Elenis*,
445 F. Supp. 3d 1226 (D. Colo. 2019) ................................................13, 20-21

*Mink v. Suthers*,
482 F.3d 1244 (10th Cir. 2007) .....................................................................15

*NRSC v. FEC*,
146 S. Ct. 2404 (2026) ..................................................................................18

*Peck v. McCann*,
43 F.4th 1116 (10th Cir. 2022) .......................................................................12

*PGA Tour v. Martin*,
532 U.S. 661 (2001)..........................................................................................4

*Planned Parenthood of Kansas v. Andersen*,
882 F.3d 1205 (10th Cir. 2018) .....................................................................22

*Revision Military, Inc. v. Balboa Mfg. Co.*,
700 F.3d 524 (Fed. Cir. 2012)..........................................................................3

*Rocky Mountain Gun Owners v. Polis*,
121 F.4th 96 (10th Cir. 2024) .........................................................................14

*Russell v. Lundergan-Grimes*,
784 F.3d 1037 (6th Cir. 2015) .......... 21

*S. Utah Drag Stars v. St. George*
677 F. Supp. 3d 1252 (D. Utah 2023) .......... 25

*SBA List v. Driehaus*,
573 U.S. 149 (2014) .......... 12, 17-18, 21

*Schrier v. University of Colorado*,
427 F.3d 1253 (10th Cir. 2005) .......... 26

*Scott v. Allen*,
153 F.4th 1088 (10th Cir. 2025) .......... 1-3, 20

*Singleton v. Wulff*,
428 U.S. 106 (1976) .......... 23

*St. Mary Catholic Parish v. Roy*,
736 F. Supp. 3d 956 (D. Colo. 2024) .......... 16

*Stalder v. Colorado Mesa University*,
551 P.3d 679 (Colo. Ct. App. 2024) .......... 4

*Staley v. Nat'l Capital Area Council, BSA*,
2011 WL 2416724 (D. Md. June 9) .......... 4

*Sweat v. Am. Econ. Ins. Co.*,
782 F. Supp. 3d 1088 (D. Utah 2025) .......... 23

*Telescope Media Group v. Lucero*,
936 F.3d 740 (8th Cir. 2019) .......... 24

*Tennessee v. Cardona*,
737 F. Supp. 3d 510 (E.D. Ky. 2024) .......... 9

*Texas Midstream Gas Services v. City of Grand Prairie*,
608 F.3d 200 (5th Cir. 2010) .......... 23

*Turtle Island Foods v. Strain*,
65 F.4th 211 (5th Cir. 2023) .......... 3

*United States v. Rutherford*,
120 F.4th 360 (3d Cir. 2024) .......... 19-20

*Verlo v. Martinez*,
820 F.3d 1113 (10th Cir. 2016) .......... 22

*Vermont Right to Life Committee v. Sorrell*,
221 F.3d 376 (2d Cir. 2000) .......... 15

*Virginia v. Hicks*,
539 U.S. 113 (2003) ........ 25

*Winsness v. Yocom*,
433 F.3d 727 (10th Cir. 2006) ........ 15

*Wyatt Bury, LLC v. Kansas City*,
804 F. Supp. 3d 939 (W.D. Mo. 2025) ........ 8

**Statutes & Regulations**

28 C.F.R. Part 36, App. C ........ 5

3 C.C.R. 708-1:10.8 ........ 20

3 C.C.R. 708-1:81.6 ........ 13

Colo. Rev. Stat. §24-34-301 ........ 1, 4, 7, 13

Colo. Rev. Stat. §24-34-306 ........ 18, 20

Colo. Rev. Stat. §24-34-601 ........ 1, 4, 7, 10-11

Colo. Rev. Stat. §24-34-701 ........ 6, 10-11

Mich. Comp. Laws §37.2302 ........ 8

## INTRODUCTION

Plaintiffs believe that sex is biological and fixed at birth, and they want to use language consistent with that belief. Colorado, however, has a history of using the State's Anti-Discrimination Act to punish dissenting speech on sex and gender. *E.g.*, *Masterpiece Cakeshop v. CCRC*, 584 U.S. 617 (2018); Opening.Br. (Dkt.18) 4, 29-31; SLF.Br. (Dkt.63) 9-17. So, after Colorado amended CADA to compel the use of preferred pronouns and names in public accommodations, Plaintiffs sought a preliminary injunction to protect their speech rights.

Defendants refuse to defend CADA's new speech ban on the merits. Instead, they try to rewrite the law's text to avoid Plaintiffs' speech. But CADA applies to any "person" in a place of public accommodation and prohibits all refusals to use someone's "chosen name" or preferred form of "addres[s]." Colo. Rev. Stat. §§24-34-601(2)(a), 301(3.5), (9). And Defendants agree that "intentional deadnaming or misgendering" violates CADA in at least some "circumstances." 5-App-018:16-24; *see* Resp.Br. (Dkt.89) 2. Because plaintiffs need show only that their speech is "arguably" proscribed, that is more than enough. *Scott v. Allen*, 153 F.4th 1088, 1096 (10th Cir. 2025).

Defendants cannot eliminate standing by calling CADA's application "fact-dependent." Resp.Br.52-54. In chilled-speech cases, uncertainty over the law's application *is* the constitutional injury. *IFS v. Johnson*, 148 F.4th 318, 329 (5th Cir. 2025). Defendants' refusal to say when Plaintiffs' speech will violate CADA doesn't remove the threat of enforcement; it *increases* the threat. *See* Opening.Br.38-39; CAL.Br. (Dkt.55) 9, 13-17.

Requiring Plaintiffs to show that enforcement is inevitable would turn pre-enforcement standing doctrine on its head.

Finally, hoping to avoid an unfavorable decision on the merits, Defendants ask this Court to remand. *See* Resp.Br.64-65, 70. But Defendants' remaining jurisdictional arguments (which they restate here only in cursory fashion) and the merits (which they refuse to address at all) should be resolved now. Remanding would lead to "'piecemeal appeals'" and compound Plaintiffs' injuries, as they are forced to silence themselves every day they go without an injunction. *Grosvenor v. Qwest Corp.*, 733 F.3d 990, 1000 (10th Cir. 2013).

Plaintiffs likely have standing, Defendants have (again) forfeited the merits, and the remaining preliminary-injunction factors can be resolved only in Plaintiffs' favor. This Court should reverse the decision below and order an injunction.

## ARGUMENT

### I. Plaintiffs likely have standing.

Defendants don't dispute traceability or redressability. Nor do they dispute that Defending Education and Do No Harm, as associations, have standing if the other Plaintiffs do. *See* Opening.Br.23; Resp.Br.44. Instead, Defendants dispute only injury-in-fact. But this Court uses a "lenien[t]" test to evaluate injury in First Amendment cases. *Scott*, 153 F.4th at 1095.[1] Plaintiffs satisfy that easy test because their speech is at

[1] Defendants ask this Court to apply a "'heightened standard'" because they argue an injunction would "disturb the status quo." Resp.Br.28. But an injunction would *preserve* the status quo. *See infra* II.C.2. Regardless, any heightened standard would govern

least arguably proscribed by CADA and there is a credible threat of enforcement. *See* Opening.Br.24-33.

### A. Plaintiffs are arguably subject to CADA.

Defendants try to rewrite CADA to avoid applying it to Plaintiffs' speech. But CADA's text and anti-discrimination caselaw confirm that Plaintiffs are subject to the law. Critically, this "is not a high bar." *Scott*, 153 F.4th at 1096. Plaintiffs "need not show that" their speech "*actually* violates the law, just that it *arguably* does." *Id.* Plaintiffs have standing, then, as long as their reading of CADA is plausible, even if it is not "the *best* interpretation." *Turtle Island Foods v. Strain*, 65 F.4th 211, 218 (5th Cir. 2023); *see* Opening.Br.37-38.

**1. CPAN and PKC are subject to CADA.** Defendants first argue that CADA "does not apply" to Colorado Parent Advocacy Network and Protect Kids Colorado because those organizations are not "themselves places of public accommodation." Resp.Br.39-44. As Defendants acknowledge, the district court did not rely on this argument to deny a preliminary injunction, *see id.* at 40 n.6, and in any event, the argument is wrong because CADA regulates persons, not places.

CADA does not regulate places of public accommodation directly. Instead, it makes it unlawful for a "person" operating *in* a place of public accommodation to "directly or indirectly" deny someone "the full and equal enjoyment of" the "public

---

the "balance of equities," not standing. *Revision Military, Inc. v. Balboa Manufacturing Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012).

accommodation." *Id.* §24-34-601(2)(a). The law, in other words, regulates the speech of the "person." *Id.* And a "person" includes "associations, corporations," and their "legal representatives." *Id.* §24-34-301(15)(a). It certainly does not exclude "'advocacy'" organizations from its coverage. *Contra* Resp.Br.40-42.

Defendants respond that CPAN and PKC are "mere users" of public accommodations, akin to "customers" rather than operators. Resp.Br.42-43. Of course, an "organization does not become an owner or operator of a place of public accommodation merely because" its members "visit that place of public accommodation." *Staley v. Nat'l Capital Area Council, BSA*, 2011 WL 2416724, *10 (D. Md. June 9). But when an organization is "the sole operator or lessee" of a public accommodation "during [its] visits" or has the "authority" to decide who is admitted to an event, it goes beyond a mere visitor. *Id.*

For example, a company that hosts "seminars" for "the general public" in "statutorily defined public accommodations," like a "hotel meeting room," is subject to the Americans with Disabilities Act. *Jensen v. United First Financial*, 2009 WL 5066683, *1, *5-6 (D. Utah Dec. 16); *see Stalder v. Colorado Mesa University*, 551 P.3d 679, 683 (Colo. Ct. App. 2024) (CADA is read "consistently with" the ADA). The company "operate[s]" the accommodation "for the duration of the rental" and thus "control[s]" access to the "benefit[s] or privileges" conferred by "attendance" at the event. *Jensen*, 2009 WL 5066683 at *6; *see PGA Tour v. Martin*, 532 U.S. 661, 677 (2001) (An "even[t]" hosted by a private organization in "a public accommodation" is "comfortably within the

coverage" of the ADA.); *Disabled Rights Action Committee v. Las Vegas Events*, 375 F.3d 861, 877-78 (9th Cir. 2004) ("[P]rivate entities" are operators subject to the ADA when they "exercise sufficient control over the [venue]."). Federal regulations read anti-discrimination law the same way. *See* 28 C.F.R. Part 36, App. C ("An entity that is not in and of itself a public accommodation … may become a public accommodation when it leases space for a conference … at a hotel [or] convention center.").

Likewise, "organizations that conduct activities in facilities … that are open to the public" are subject to CADA even if they are not themselves public accommodations. *Creek Red Nation v. Jeffco Midget Football Association*, 175 F. Supp. 3d 1290, 1298 (D. Colo. 2016). Indeed, the Division has filed at least one complaint against an individual whose conduct *in* a public accommodation allegedly denied others equal enjoyment of the space based on their gender identity. *Contra* Resp.Br.42; *e.g.*, *Craig v. Masterpiece Cakeshop*, 370 P.3d 272, 278 (Colo. Ct. App. 2015) (naming the owner "personally" because "he was the person whose conduct was at issue").

CPAN and PKC are therefore subject to CADA because they regularly host events in "statutorily defined public accommodations" like hotels, restaurants, and conference centers; they "control" who speaks at the events, what is discussed, and who is allowed access; and they "operate" those venues "for the duration of" their events. *Jensen*, 2009 WL 5066683 at *6; *see, e.g.*, 1-App-120-21 ¶10; 1-App-142 ¶10; 3-App-23-41. When transgender individuals leave those events because they claim that CPAN's or PKC's non-gender-affirming speech makes them "uncomfortable," the groups have

operated the venue in a manner that (according to CADA) denies those individuals enjoyment of the venue. *Hager v. Brinker Texas, Inc.*, 102 F.4th 692, 701 (5th Cir. 2024); *see* Opening.Br.39.

Even if CPAN and PKC are not themselves subject to CADA, the venues hosting their events certainly are. *See* 4-App-279:15-285:15, 295:20-25; 5-App-001:1-002:14. Venues will not lease space to groups whose actions might incur liability for the venue itself. *Cf. Botosan v. Paul McNally Realty*, 216 F.3d 827, 832-34 (9th Cir. 2000) ("Owners" cannot "contract away liability."). Indeed, both CPAN and PKC testified that, "in [their] experience, venues will be less willing to host [their] public events if" the group "is branded a 'discriminatory' organization." 1-App-127 ¶28; 1-App-148 ¶28. That risk independently supports standing. *See FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 384-85 (2024) ("[G]overnment regulation of a third-party individual or business may be likely to cause injury in fact to an unregulated plaintiff.").

**2. Plaintiffs' speech arguably violates CADA.** Next, Defendants argue that "misgendering and deadnaming" are not "*per se* unlawful practices" under CADA. Resp.Br.10; *see also id.* at 9, 30-32, 51-54. They argue that the law punishes such speech only if it "rise[s] to the level of being subjectively and objectively hostile," which supposedly requires that the speaker "intentionally treat the individual differently based on [transgender] status" and that such treatment constitute both an "objectiv[e]" and "subjectiv[e]" denial of the enjoyment of a public accommodation. *Id.* at 6, 9-10.

The problem is that CADA says none of this. Rather, the law as amended by H.B. 25-1312 makes it unlawful to "directly or indirectly" deny a transgender person the "full and equal" enjoyment of a place of public accommodation by refusing to use their "chosen name" or other terms by which they "choos[e] to be addressed." Colo. Rev. Stat. §§24-34-301(9), 24-34-601(2)(a); *see* Opening.Br.34-35. That is what it *means* to misgender or deadname someone. *See* Resp.Br.2 n.1. And that is what Plaintiffs want to do. *See* Opening.Br.26-27. The law requires nothing more for a violation to occur. In fact, Defendants admitted below that their extra "harassment standard is not in the statute," 5-App-098, and they cannot change that reality by "reading" additional requirements "into [the] statute," *Dean v. United States*, 556 U.S. 568, 572 (2009).

Other language added to CADA by H.B. 25-1312 confirms that it broadly compels the use of preferred pronouns and names. While the amended statute generally requires using the name that "an individual requests to be known as," it exempts names that "contain offensive language" or are "request[ed] … for frivolous purposes." Colo. Rev. Stat. §24-34-301(3.5). For example, a person subject to CADA must address someone as "Frank" or "Susan," but need not address someone as "The Amazing Spider-man" or a name that contains profanity. That the Colorado legislature specified an "exception" for offensive or frivolous names "amounts to an affirmation" that CADA requires the use of gender-affirming names and pronouns in "all other cases not excepted." *Glover Constr. Co. v. Andrus*, 591 F.2d 554, 557 (10th Cir. 1979).

Caselaw likewise agrees that refusing to use someone's preferred terminology, without more, "arguably den[ies]" them equal enjoyment of a public accommodation. *Christian Healthcare Centers v. Nessel*, 117 F.4th 826, 845 (6th Cir. 2024); *e.g.*, *Wyatt Bury, LLC v. Kansas City*, 804 F. Supp. 3d 939, 959-60 (W.D. Mo. 2025) (enjoining an ordinance prohibiting discrimination based on "gender identity" to the extent it "'requires'" people to "'refer to'" others "'using those persons' self-selected pronouns'"). Defendants try to distinguish *Nessel*. *See* Resp.Br.30 n.5. But that decision involved a Michigan law almost identical to CADA, *see* Mich. Comp. Laws §37.2302 ("a person shall not … [d]eny an individual the full and equal enjoyment of … a place of public accommodation … because of … gender identity or expression"), and the Sixth Circuit construed that law to arguably guarantee "transgender individuals the privilege … of using pronouns … in accordance with their gender identity," 117 F.4th at 845. Certainly, if courts have construed similar laws to cover simple misgendering and deadnaming, Plaintiffs' "interpretation" of CADA to reach that language here is at least "arguable" and therefore sufficient "for the purposes of standing." *Am. Encore v. Fontes*, 152 F.4th 1097, 1116 (9th Cir. 2025).

Defendants say more "specific facts" are needed to determine whether Plaintiffs' speech violates CADA. Resp.Br.3, 49-50. But they never identify *what* more is required, instead retreating to their atextual claim that speech is punishable when it "ris[es] to the level of harassment." *Id.* at 50. That qualifier is cold comfort for Plaintiffs because many consider *all* intentional misgendering and deadnaming objectively harassing. *E.g.*, *Gays*

*Against Groomers v. Garcia*, 169 F.4th 981, 986 (10th Cir. 2026) ("For people who are transgender, these practices can be deeply offensive, disrespectful, and perhaps discriminatory."); *Barry v. Thomas Jefferson University Hospitals*, 2026 WL 935837, *10 (E.D. Pa. Apr. 7) (it "suggest[s] that someone is unwelcome or perhaps even unsafe").

Defendants' own expert testified that "reasonable" transgender individuals find misgendering and deadnaming "offensive" and perceive it as a "message of derision, disrespect, or rejection." 4-App-135:13-19, 202:9-17, 203:3-13. Plaintiffs likewise have been threatened with legal action and, in Dr. Leswing's case, lost patients for refusing to use gender-affirming language. *See* Opening.Br.15. Thus, even under Defendants' theory, Plaintiffs would have standing.

Proving the point, the en banc Sixth Circuit recently deemed a school pronoun policy unconstitutional even though the policy was limited to speech that "rises to the level of bullying or harassment." *Defending Education v. Olentangy*, 158 F.4th 732, 743 (6th Cir. 2025). That qualifier, the court observed, solved nothing because school authorities "could perceive" misgendering "as creating an 'offensive' educational environment" even if a student spoke in "good faith." *Id.*; *see also Tennessee v. Cardona*, 737 F. Supp. 3d 510, 549 (E.D. Ky. 2024) ("Considering [misgendering] is a hotly debated topic of public interest, how can there be an 'objective' standard?").

Indeed, Defendants themselves testified that, in at least some "circumstances," intentional misgendering or deadnaming "create[s] a subjectively and objectively hostile environment" punishable by CADA. 5-App-018:16-24. And now, Defendants confirm

that someone can "den[y] an individual the full and equal enjoyment" of a public accommodation "based on that person's 'chosen name, and how the individual chooses to be addressed.'" Resp.Br.2. In other words, Defendants concede that—depending on the surrounding circumstances—misgendering and deadnaming *can* violate CADA. *Cf. Animal Legal Defense Fund v. Kelly*, 9 F.4th 1219, 1228-29 (10th Cir. 2021) (a law targets speech if it turns on "the content of the regulated speech," even if other "content-neutral" factors are also involved). That is enough for standing.

Besides, Plaintiffs *have* offered details about their desired speech. They want to misgender and deadname intentionally, they want to do so repeatedly, they want to do so even if someone asks them to stop, and they want to do so with everyone, including at their public events and in their medical practices. *See* Opening.Br.12-14. In fact, Plaintiffs have given detailed accounts of real situations in which they have misgendered people. *E.g.*, 7-App-004-06. And as Defendants agreed in their deposition testimony, even a "single instance of misgendering or deadnaming" may rise "to the level of harassment." 5-App-016:24-017:6. Because "at least some" of Plaintiffs' speech "arguably" violates CADA, they have standing. *303 Creative v. Elenis*, 6 F.4th 1160, 1173 (10th Cir. 2021).

**3. Plaintiffs' written speech arguably violates CADA.** The same is true for the Unwelcome and Unwelcome Statements Provisions. *See* Colo. Rev. Stat. §§24-34-601(2)(a), 701(1)(c). Here, too, Defendants try to rewrite the provisions, arguing that CADA isn't violated unless a written statement is objectively harassing and explicitly

states that transgender people are "not welcome," will be denied goods or services, or will be "charged more" for those goods or services. Resp.Br.44-45. But again, those requirements have no basis in the text.

The provisions do not, for example, apply only when a statement constitutes "objective harassment." *Contra* Resp.Br.46. Rather, they prohibit all statements that a person's presence "is unwelcome or objectionable or not acceptable, desired, or solicited." Colo. Rev. Stat. §24-34-701; *see also id.* §24-34-601(2)(a) (similar). Nor do the provisions require explicit statements that an individual will be refused service. *Contra* Resp.Br.44-45. Instead, they punish statements that merely "*indicat[e]*," even "indirectly," that a transgender individual will feel "unwelcome." Colo. Rev. Stat. §24-34-601(2)(a) (emphasis added).

As at least one judge in this circuit has already concluded, these provisions apply broadly. *See 303 Creative*, 6.F.4th at 1214 (Tymkovich, C.J., dissenting) (CADA arguably prohibits a "Muslim shop owner" from displaying a sign about "Allah" because a "Christian" customer might feel that the owner finds Christian views "objectionable"). It "takes little imagination to" see how a transgender individual could find Plaintiffs' use of biological pronouns objectionable and unwelcoming. *Id.*; *e.g.*, *Gays Against Groomers*, 169 F.4th at 986. For example, a social media post identifying a transgender person without using their "chosen name" or preferred pronouns might make other transgender people feel unwelcome at Plaintiffs' events or in their medical practices. *See* Opening.Br.13, 34-35; 1-App-186 ¶15.

**4. Defendants offer no support for their version of CADA.** The text and caselaw confirm that Plaintiffs are subject to CADA and the law proscribes their speech. Defendants, on the other hand, identify no statute, regulation, or internal document purporting to exclude Plaintiffs or their speech from CADA's coverage. *See Darren Patterson Christian Academy v. Roy*, 699 F. Supp. 3d 1163, 1180 (D. Colo. 2023) ("assurances" that are merely "a product of litigation" "fall flat"). That is fatal for Defendants because, again, Plaintiffs need only show that CADA "arguably" applies. *SBA List v. Driehaus*, 573 U.S. 149, 162 (2014).

**B. Plaintiffs face a credible threat of enforcement.**

The "'bar that must be met'" to show a credible threat of enforcement is "'extremely low.'" *Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022). As long as the threat is not "wholly speculative," it is enough. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979). Plaintiffs have more than cleared that bar because all relevant factors show a credible threat of enforcement here. *See* Opening.Br.26-33.

**1. H.B. 25-1312 is a new law.** Defendants don't dispute that there is a "'presumption of enforcement'" for "new" and recently amended laws. *Darren Patterson*, 699 F. Supp. 3d at 1176; *see Bryant v. Woodall*, 1 F.4th 280, 286-87 (4th Cir. 2021); *Cerame v. Slack*, 123 F.4th 72, 85-86 (2d Cir. 2024). And they don't dispute that H.B. 25-1312, which amended CADA to regulate the use of pronouns and names, was enacted just one business day before Plaintiffs filed this lawsuit. *See* Opening.Br.28. "It is difficult to

explain" why the Colorado "legislature would have altered the text of [CADA] if it did not expect for those words" to have any "effect." *Bryant*, 1 F.4th at 287.

Defendants respond by pointing to Rule 81.6, an existing Commission regulation that prohibits misgendering and deadnaming when it rises to the level of "harassment." Resp.Br.57-58; *see* 3 C.C.R. 708-1:81.6. But Rule 81.6 has a different scope than H.B. 25-1312. *See* Opening.Br.51. The rule prohibits misgendering and deadnaming when it is "subjectively and objectively hostile, intimidating, or offensive," 3 C.C.R. 708-1:81.6(A), and Defendants have never relied on the rule as a basis for liability outside of the employment context, *see* 4-App-270:19-274:3, 275:14-276:9; 6-App-104-13, 118-27. H.B. 25-1312, by contrast, bans *all* refusals to use a "chosen name" or other preferred terms of "addres[s]," and it covers public accommodations. Colo. Rev. Stat. §24-34-301(9); *see* Opening.Br.34-36. As Defendants conceded below, Rule 81.6's extra requirements "are not in the Colorado Anti-Discrimination Act." 4-App-262:21-263:2.

Even if H.B. 25-1312 simply expanded on Rule 81.6, its recent enactment would still show a threat of enforcement. H.B. 25-1312's adoption was the subject of intense "public interest," so it is "not difficult to find it likely" that members of the public will seek to enforce it. *Masterpiece Cakeshop v. Elenis*, 445 F. Supp. 3d 1226, 1256 (D. Colo. 2019). The amendment's passage generates "a renewed interest in regulating" gender-based speech. *Bryant*, 1 F.4th at 287; *see* WoLF.Br. (Dkt.87) 4-5. Indeed, in *Bryant*, the Fourth Circuit found a likelihood of enforcement based on recent amendments to an abortion law even though the challenged provision remained "unchanged as a result of"

the amendments. 1 F.4th at 287; *contra* Resp.Br.58. The amendments "indicate[d]" a "continued interest in enforcing" the whole statutory scheme. 1 F.4th at 287.

**2. Defendants have not disavowed enforcement.** The "threat of prosecution is generally credible" when defendants fail to disavow enforcement. *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 110-11 (10th Cir. 2024). And Defendants *still* have not promised they will not enforce CADA against Plaintiffs.

Repeating the district court's error, Defendants continue to pass off non-binding statutory-construction arguments as disavowals. They claim they have "disavowed enforcement as to" CPAN and PKC based on their contention that the two groups are not subject to CADA in the first place. Resp.Br.42. They claim they have disavowed enforcement as to all Plaintiffs based on their argument that "deadnaming and misgendering is not a *per se* violation of CADA." Resp.Br.52. And they say they have disavowed enforcement of the Unwelcome and Unwelcome Statements Provisions based on their argument that Plaintiffs' written statements, *e.g.*, 1-App-122-24 ¶¶15-18; 1-App-143-45 ¶¶15-18; 1-App-169-70 ¶¶13, 16; 1-App-186 ¶¶14-15, don't explicitly promise to deny service, *see* Resp.Br.46.

Those arguments are wrong. *See supra* I.A. More important, saying that Plaintiffs' speech "might" not violate Defendants' atextual reading of the law is *not* a disavowal. Resp.Br.49, 50, 54; *see FEC v. Cruz*, 596 U.S. 289, 299-300 (2022) (When the government argues conduct "would *not* violate the statute," that argument has "an Alice in Wonderland air about [it]."). Mid-litigation assurances based on "the State's

construction" of the law do not dispel the threat of enforcement. *Citizens for Responsible Gov't State PAC v. Davidson*, 236 F.3d 1174, 1192 (10th Cir. 2000). "[T]here is nothing that prevents the State from changing its mind," abandoning "the view of the law that it asserts in [the] litigation," and deciding that the plaintiff's conduct *is* punishable. *Vermont Right to Life Committee v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000). Nor does repeating a legal argument in "declarations and deposition testimony" create a proper disavowal. *Contra* Resp.Br.47.

To disavow enforcement, Defendants must do more. Courts, for example, have found disavowal when defendants "categorically" foreswear "any intention" to prosecute plaintiffs even when they *do* violate the law. *Winsness v. Yocom*, 433 F.3d 727, 736 (10th Cir. 2006). In *Winsness*, for instance, the defendant "filed an affidavit" confirming that, due to "constitutional doubts about the" challenged law, he would not prosecute the plaintiff "or anyone else under the statute." *Id.* at 732 (cleaned up). In another case, the Tenth Circuit found no threat of enforcement after a district attorney issued a "No File" decision "unequivocal[ly]" stating that a plaintiff "would not be prosecuted under the statute now or in the future" because "Supreme Court precedent [made] enforcement of the … statute unconstitutional." *Mink v. Suthers*, 482 F.3d 1244, 1256-57 (10th Cir. 2007).

Defendants' contingent promises fall far short of that standard. Even the district court agreed that "Defendants have not completely disavowed any possible prosecution." 5-App-168. On the contrary, their arguments "leave intact the State's full

enforcement authority" and "reserve rather than relinquish enforcement discretion." 5-App-195-96 (recommending denying Defendants' motions to dismiss on that basis). Indeed, Defendants maintain that they have "compelling" interests in enforcing the challenged provisions. Resp.Br.63; *see 303 Creative*, 6 F.4th at 1174 ("Colorado's strenuous assertion that it has a compelling interest in enforcing CADA indicates that enforcement is anything but speculative.").

If anything, Defendants' claim that CADA's application is "fact-dependent" is the opposite of a disavowal. Resp.Br.52-54. It is an assertion that Defendants will enforce the law when they see fit. *See Johnson*, 148 F.4th at 329 (The claim that "enforcement would depend on the facts of the case" is a "refusal to disavow prosecution." (cleaned up)). Treating it as a disavowal, as the district court did, "gets things backwards." CAL.Br.9. Defendant's enforcement discretion is the "source" of Plaintiffs' injury precisely "because the line is unclear." *Id.* at 9, 13. "That is exactly why pre-enforcement review is necessary." *Id.* at 13.

Defendants cite two cases to support their disavowal argument, but those cases highlight the gap between genuine disavowals and their arguments here. *See* Resp.Br.47, 53. In *St. Mary Catholic Parish v. Roy*, for example, the defendants didn't just "construe" the challenged provision to avoid "conflict with federal law." 736 F. Supp. 3d 956, 983-84 (D. Colo. 2024). Instead, they testified that the provision "would not be applied" against anyone and would be "removed" altogether. *Id.* at 983-85. That "complete" disavowal eliminated the threat of enforcement. *Id.* at 985-86. By contrast, in *Nessel*, the

Sixth Circuit confirmed that, even if defendants aren't always required to disavow enforcement to eliminate the threat of enforcement, they "cannot disavow enforcement" by claiming that "applicability" is "'fact-dependent.'" 117 F.4th at 848, 850-51.

**3. Defendants have punished similar speech in the past.** Past enforcement is not required, but it is "good evidence" of a threat of future enforcement. *SBA List*, 573 U.S. at 164. Even "one case" can "be considered a history of enforcement." *Braidwood Management v. EEOC*, 70 F.4th 914, 927 (5th Cir. 2023). And Defendants have punished speech on sex and gender identity in the past. *See* Opening.Br.29-31, 42-43; SLF.Br.9-17. They have also, as Defendants acknowledge, "pursue[d] CADA enforcement based on gender expression discrimination." Resp.Br.58.[2]

Defendants try to distinguish past examples in which they *have* targeted speech on sex and gender, claiming those examples "involved additional facts beyond misgendering and deadnaming" or involved "employment" rather than public accommodations. *See* Resp.Br.55-57. But that's not accurate: In at least one case, the Civil Rights Division found a probable CADA violation specifically "because [a blood donor] was not allowed to self-identify her gender in her donor profile." 6-App-144. Regardless, Defendants do not dispute that the examples cited in Plaintiffs' brief, at their core, involved non-gender-affirming speech. *E.g.*, *id.*; 6-App-078 (employee was "consistently

[2] Defendants note that no one has yet filed a discrimination charge specifically against Plaintiffs. Resp.Br.55. But that's the *point* of a pre-enforcement challenge: A "plaintiff need not first expose himself to" enforcement before "challeng[ing] the statute." *Babbitt*, 442 U.S. at 302 (cleaned up).

misgendered"); *Chiles v. Salazar*, 146 S. Ct. 1010, 1019 (2026) (law regulated therapist's "speech" regarding "a client's 'behaviors or gender expressions'"). Those examples show that Defendants will use CADA to punish the "type" of speech that Plaintiffs want to use. *IRI v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006). "[E]ven if the facts" in those cases were not "precisely the same as" Plaintiffs' intended speech, they nonetheless establish "a history of enforcement." *Braidwood Management*, 70 F.4th at 927.

**4. Anyone can file a complaint.** Defendants don't disagree that CADA allows "any person" to file a charge alleging discrimination. Colo. Rev. Stat. §24-34-306(1)(a)(I). They also don't dispute that this fact "bolster[s]" the threat of enforcement, especially because Plaintiffs, as advocacy organizations and physicians with public-facing practices, are "easy targets." *SBA List*, 573 U.S. at 164; *see* Opening.Br.32-33.

Instead, Defendants simply argue that "the possibility of private complaints" should not "subsume the other" credible-threat factors. Resp.Br.59. But here, the other factors *also* show a threat of enforcement. *See supra* I.B.1-3. Defendants also try to distinguish the Supreme Court's recent decision in *NRSC v. FEC*, 146 S. Ct. 2404 (2026). *See* Resp.Br.59-62. But *NRSC* confirms that, when anyone can file a complaint, the "threat of enforcement" is real. 146 S. Ct. at 2414-15.

Finally, Defendants borrow the district court's argument that the prospect of private enforcement through civil suits somehow weighs *against* an injunction. *See* Resp.Br.59 n.10. The Tenth Circuit, though, has already held that injunctions against state officials are appropriate even "in cases where the state defendant shares

enforcement power with private litigants." *CDIA v. King*, 678 F.3d 898, 904-05 (10th Cir. 2012). That's why private suits were no obstacle in *303 Creative* or *Masterpiece Cakeshop*, which both granted injunctions against CADA. *See* 6 F.4th 1160 (10th Cir. 2021); 584 U.S. 617 (2018).

### C. Defendants' remaining jurisdictional arguments fail.

Trying to further stall a decision on the merits, Defendants ask this Court—if it finds a threat of enforcement—to remand for the district court to address alternative jurisdictional arguments. *See* Resp.Br.64-65. But remanding for *another* decision from the district court, potentially "leading to yet another interlocutory appeal," before "finally resolv[ing] the issue" of jurisdiction, is "contrary to the well-established 'preference in the federal courts disfavoring piecemeal appeals.'" *Grosvenor*, 733 F.3d at 1000.

The better path is to resolve Defendants' alternative arguments now. Those arguments raise "'purely legal questions'" and were fully "briefed" below. *United States v. Rutherford*, 120 F.4th 360, 373-74 (3d Cir. 2024). If Defendants had more to add to those arguments, they would do so here. But their briefing leaves the arguments "undeveloped." *Hawkins v. Schwan's Home Services*, 778 F.3d 877, 890 n.9 (10th Cir. 2015). Instead, they offer conclusory summaries designed only to discourage an adverse decision on the merits from this Court. *See* Resp.Br.65-66. This Court should not reward that effort. *See Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, 139 (1st Cir. 2017) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold

its peace.'"). It should address (and reject) Defendants' alternative arguments "'in the first instance.'" *Rutherford*, 120 F.4th at 373-74.

**1.** First, on standing, Defendants suggest Plaintiffs lack an "'ongoing injury resulting from'" a "'chilling effect'" on their speech. Resp.Br.65. But when plaintiffs show that their speech is arguably proscribed, *see supra* I.A, and that a credible threat of enforcement exists, *see supra* I.B, they have shown an objective chill. *Scott*, 153 F.4th at 1094. And objective chill *is* an "injury in fact." *First Choice Women's Resource Centers v. Davenport*, 146 S. Ct. 1114, 1126 (2026).

Defendants complain that the district court did not "separately address" standing for the Attorney General. Resp.Br.65-66. But Plaintiffs have standing against the Attorney General for the same reasons they have standing against the other Defendants. Defendants claim the Attorney General "does not enforce CADA," *id.*, but the Attorney General can file charges of discrimination, Colo. Rev. Stat. §24-34-306(1)(b), and he prosecutes charges filed by others at Commission hearings, *see id.* §24-34-306(8); 3 C.C.R. 708-1:10.8(A)(3). Though Defendants say the Attorney General has not "previously exercised" his power to file a charge, Resp.Br.66, the lack of past enforcement alone does not "torpedo" standing when the other credible-threat factors favor the plaintiff, *Darren Patterson*, 699 F. Supp. 3d at 1176. And Defendants don't dispute that the Attorney General regularly prosecutes charges at hearings. *See Masterpiece*, 445 F. Supp. 3d at 1253.

**2.** Defendants also rehash their sovereign-immunity arguments for the Attorney General. But those arguments largely duplicate their standing arguments and fail for the same reasons. *See* Resp.Br.66-67. Indeed, when plaintiffs show a "threat of enforcement" sufficient for "Article III standing," they necessarily "satisfy" the *Ex parte Young* exception to sovereign immunity. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015); *see Book People, Inc. v. Wong*, 91 F.4th 318, 335 (5th Cir. 2024). Confirming as much, at least one court has already rejected the argument that the Attorney General is protected by sovereign immunity in lawsuits against CADA. *See Masterpiece*, 445 F. Supp. 3d at 1252-53.

**3.** Finally, Defendants try a conclusory ripeness argument. *See* Resp.Br.66. But again, as Defendants acknowledged below, their ripeness argument merely repeats their standing argument. *See* 1-App-273; *SBA List*, 573 U.S. at 157 n.5 (standing and ripeness often "boil down to the same question"). In any event, their "ripeness challenge fails here because the Plaintiffs' alleged injury is already occurring." *IRI*, 450 F.3d at 1098. CADA currently "chills the exercise of the Plaintiffs' First Amendment rights" because it arguably prohibits their speech and they credibly fear enforcement. *Id.*; *see supra* I.A-B. That "injury does not depend on any uncertain, contingent future events, and the courts would gain nothing by allowing the issues in the case to develop further." *IRI*, 450 F.3d at 1098.

**4.** Remand is especially unnecessary because the magistrate judge has *already* rejected the arguments Defendants summarize here. The magistrate judge's

recommendation to deny Defendants' motions to dismiss, which departed from many of the conclusions reached in the recommendation on Plaintiffs' preliminary-injunction motion, determined that Plaintiffs' speech *is* arguably proscribed by CADA, they *do* face a threat of enforcement, their speech *is* objectively chilled, and the Attorney General does *not* have sovereign immunity. 5-App-192-97, 201-04

## II. The Court should grant a preliminary injunction.

Defendants yet again forfeit the merits. And the remaining factors (irreparable harm and the equities) necessarily favor Plaintiffs. So, because Plaintiffs likely have standing, this Court should grant an injunction. *See* Opening.Br.43.

### A. Defendants continue to dodge the merits.

Defendants still refuse to defend CADA on the merits, even though the merits are the "most important" preliminary-injunction factor. *Planned Parenthood of Kansas v. Andersen*, 882 F.3d 1205, 1229 (10th Cir. 2018); *see* Resp.Br.69. Plaintiffs and multiple amici briefed CADA's constitutional flaws again in this Court, *see* Opening.Br.44-48; IWLC.Br. (Dkt.28) 3-7; CAL.Br.18-23, but Defendants once more decline to respond to those arguments, confirming they have forfeited the merits "for purposes of" the "preliminary injunction," *Verlo v. Martinez*, 820 F.3d 1113, 1133 (10th Cir. 2016).

Defendants hardly defend their silence. They claim only that their refusal to brief the merits is "'justified'" because they also raise jurisdictional arguments. Resp.Br.69. But the "tactical decision to address only" jurisdiction does not relieve defendants of their obligation to address the merits, even if they are "convinced" their jurisdictional

"argument [i]s a winner." *Texas Midstream Gas Services v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010); *e.g.*, *Martinez v. Sessions*, 873 F.3d 655, 660 (9th Cir. 2017) ("The government does not offer any argument on the merits," so "it has waived any challenge to the arguments [the appellant] raised.").

The lone case on which Defendants rely, *Singleton v. Wulff*, 428 U.S. 106 (1976), does not help them. There, the state filed a "pre-answer motion to dismiss" raising non-merits arguments, which the district court granted. *Id.* at 110-11. The court of appeals then reversed and issued a "'final determination of th[e] [whole] case'" without giving the state the "opportunity" to file an answer or additional briefing on the merits. *Id.* at 111-12, 120. By contrast, the "preliminary injunction" requested here "is not a full and final adjudication of the merits of a claim." *Sweat v. Am. Econ. Ins. Co.*, 782 F. Supp. 3d 1088, 1091 n.18 (D. Utah 2025). More importantly, Defendants have had *multiple* opportunities to argue the merits, below and now on appeal. *See* 2-App-236-37; Opening.Br.43-45. Having turned down those opportunities, they cannot now ask for yet *another* bite at the apple.

### B. The remaining factors favor a preliminary injunction.

Because Plaintiffs have "valid" constitutional claims, "the remaining preliminary-injunction factors present little difficulty." *Citizens United v. Gessler*, 773 F.3d 200, 218 (10th Cir. 2014).

**1. Irreparable Harm.** Defendants' irreparable-harm arguments largely repackage their standing arguments and fail for the same reasons. *See* Resp.Br.62-63.

Defendants accuse Plaintiffs of delay, Resp.Br.63, but Plaintiffs sued just one business day after H.B. 25-1312 was enacted. Defendants suggest that Plaintiffs could have sought an earlier injunction against the Commission's existing harassment regulation or against CADA *before* it was amended by H.B. 25-1312. *See* Resp.Br.63. But the harassment regulation differs from H.B. 25-1312 in important ways. *See supra* 13. And H.B. 25-1312, by expanding CADA to cover *all* refusals to use a person's chosen name or preferred pronouns, added to the kind of speech that can violate CADA's existing provisions. *See* Opening.Br.8-10; *contra* Resp.Br.63. Regardless, even if Plaintiffs could have sought relief sooner, "'tardiness is not particularly probative in the context of ongoing, worsening injuries" like chilled speech. *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019).

**2. The Balance of Harms and the Public Interest.** Defendants assert generic "antidiscrimination interests." Resp.Br.63. But even if Colorado has an interest in deterring *acts* of discrimination, it may not "'declare another's speech itself to be a public accommodation.'" *Telescope Media Group v. Lucero*, 936 F.3d 740, 755 (8th Cir. 2019) (cleaned up). When a law is "likely unconstitutional," there is *no* state interest that outweighs a plaintiff's interest "in having [their] constitutional rights protected." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012). And it is "'always in the public interest to prevent the violation of a party's constitutional rights.'" *Free the Nipple v. Fort Collins*, 916 F.3d 792, 807 (10th Cir. 2019).

### C. A tailored preliminary injunction is appropriate.

Defendants try two arguments to show that the requested injunction is nevertheless "disfavored." Resp.Br.23, 63-64. Both fail.

**1.** First, Defendants challenge the scope of the requested injunction, arguing that the Court should not enjoin the challenged provisions "in their entirety." Resp.Br.64 n.12. The district court, notably, did not endorse this argument. *See* 5-App-162. For good reason: Plaintiffs are entitled to such relief. When a law is overbroad, as the challenged provisions are here, the proper remedy is to "invalidate *all* enforcement of that law" against the plaintiff. *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003). Likewise when a law is "impermissibly vague" on its face. *FCC v. Fox Television Stations*, 567 U.S. 239, 253 (2012).

Even if this Court disagrees, it need not deny injunctive relief altogether. Equitable relief is not all-or-nothing, and the Court "'has considerable discretion'" when "'defining the terms of an injunction.'" *S. Utah Drag Stars v. St. George*, 677 F. Supp. 3d 1252, 1275 (D. Utah 2023). The Court can craft a tailored injunction that bars Defendants from enforcing CADA against Plaintiffs' speech while allowing them to enforce the law to prohibit actual denials of service. *See Masterpiece*, 584 U.S. at 632-33 (the state may punish the "refus[al] to sell any goods" but may not coerce "expressive statement[s]").

**2.** Like the district court, Defendants argue that an injunction would "alter the status quo." Resp.Br.27. But the requested injunction would *preserve* the status quo. It

would restore the parties to "the status existing before [Colorado] enacted" H.B. 25-1312, which altered CADA to prohibit speech in which Plaintiffs had previously engaged. *Free the Nipple*, 916 F.3d at 798 n.3; Opening.Br.8-10.

The "status quo," moreover, is defined by "the *reality* of the existing status and relationships between the parties," not by their "existing *legal rights*." *Schrier v. University of Colorado*, 427 F.3d 1253, 1259 (10th Cir. 2005). Before H.B. 25-1312, Plaintiffs felt free to (and did) misgender, deadname, and use other non-gender-affirming language. *See* Opening.Br.15-16. Since H.B. 25-1312, however, Plaintiffs have "silenced" themselves because they fear they "will be hit with discrimination charges, investigated by the Division, and subjected to penalties." *Id.* at 16-17.

In any event, the "public interest" does not "favor preserving a status quo that deprives individuals of their constitutional rights." *Latta v. Otter*, 2014 WL 12597162, *1 (D. Idaho May 14). Courts will enter injunctive relief that "change[s] the status quo to meet constitutional standards." *Herrera v. Santa Fe Public Schools*, 792 F. Supp. 2d 1174, 1199-1200 (D.N.M. 2011).

Defendants, moreover, cannot have it both ways. If the "status quo" is that they will not punish "misgendering or deadnaming alone," even though CADA's text plainly reaches such speech, Resp.Br.11, 29, then a preliminary injunction merely "make[s] official that which they have promised." *Jones v. Coleman*, 2017 WL 1397212, *6 (M.D. Tenn. Apr. 19). "Defendants will not be harmed by having to comply with what they have effectively agreed to do." *Id.*

## CONCLUSION

This Court should reverse and order a preliminary injunction.

Dated: September 4, 2026

Respectfully submitted,

*/s/ J. Michael Connolly*
J. Michael Connolly
Cameron T. Norris
Paul R. Draper
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
cam@consovoymccarthy.com
paul@consovoymccarthy.com

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with FRAP 32(a)(7)(B) because it contains 6,498 words, excluding the parts that can be excluded. This brief also complies with FRAP 32(a)(5)-(6) and 10th Circuit Rule 32(A) because it is prepared in a proportionally spaced face using 14-point Garamond font.

Dated: September 4, 2026

*/s/ J. Michael Connolly*
Counsel for Appellants

## CERTIFICATE OF SERVICE

On September 4, 2026, I e-filed this brief with the Court, which will email everyone requiring notice.

Dated: September 4, 2026

*/s/ J. Michael Connolly*
Counsel for Appellants